IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:19-CV-031-GCM-DCK

| | |
|---|---|
| LISA ANNETTE LINDSAY, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment Pursuant To Rule 56 Of The Federal Rules Of Civil Procedure" (Document No. 16) and the "Commissioner's Motion For Summary Judgment" (Document No. 18). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment …" be denied; that the "Commissioner's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Lisa Annette Lindsay ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about November 21, 2014, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, alleging an inability to work due to a disabling condition beginning July 1, 2009. (Transcript of the Record of Proceedings ("Tr.") 17, 190). The alleged disability onset date was later amended to August 11,

2012.  (Tr. 17, 36, 347).  The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on April 20, 2015, and again after reconsideration on November 2, 2015.  (Tr. 109, 119).  In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling.  You have the ability to stand and walk without assistance. You have the ability to use your hands and arms to perform tasks.  Your depression does not severely affect your thinking abilities.  Your high blood pressure has not caused major damage to vital organs.  Your high cholesterol has not seriously affected your general health.  Your condition results in some limitations in your ability to perform work related activities.  We have determined that your condition is not severe enough to keep you from working.  We considered the medical and other information and work experience to determine how your condition affects your ability to work.  We do not have sufficient vocational information to determine whether you can perform any of your past relevant work.  However, based on the evidence in file, we have determined that you can adjust to other work.  We realize that your condition keeps you from doing any of your past jobs, but it is does not keep you from doing less demanding work.  Based on your age, education, and past work experience, you can do other work.  It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 119).

Plaintiff filed a timely written request for a hearing on December 17, 2015.  (Tr. 17, 128). On November 15, 2017, Plaintiff appeared and testified at a hearing before Administrative Law Judge Kevin F. Foley (the "ALJ").  (Tr. 17-27, 34-70).  In addition, Cheryl Richardson, a vocational expert ("VE"), and Jamie Johnson, Plaintiff's attorney, appeared at the hearing.  (Tr. 17, 34).

The ALJ issued an unfavorable decision on March 9, 2018, denying Plaintiff's claim.  (Tr. 14-27).  On March 27, 2018, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on January 28, 2019.  (1, 185).  The ALJ decision became the final

2

decision of the Commissioner when the Appeals Council denied Plaintiff's review request.  (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on March 19, 2019.  (Document No. 1).  On July 23, 2019, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's "Motion For Summary Judgment …" (Document No. 16) and Plaintiff's "Memorandum In Support Of Motion For Summary Judgment" (Document No. 17) were filed July 31, 2019; and the "Commissioner's Motion For Summary Judgment" (Document No. 18) and "Memorandum Of Law In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 19) were filed September 30, 2019.  Plaintiff declined to file a reply brief, and the time to do so has lapsed.  See Local Rule 7.2 (e).

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971);  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence.  Hays, 907 F.2d at 1456 (4th Cir. 1990);  see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986);  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.

3

2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 11, 2012, and her date last insured, December 31, 2017.[1] (Tr. 18, 27 ). To establish entitlement to benefits, Plaintiff has the

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 26-27).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since August 11, 2012, her alleged disability onset date. (Tr. 19). At the second step, the ALJ found that "degenerative disc disease, degenerative joint disease, obesity, anxiety and depression"

5

were severe impairments.[2] (Tr. 20). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 20-21).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations:

> she could frequently balance and occasionally stoop, kneel, crouch and crawl. She could frequently climb ramps and stairs, but no climbing of ladders, ropes or scaffolds. The claimant was limited to simple, routine and repetitive tasks with only one, two or three step instructions.

(Tr. 21). In making this finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 16-3p. I have also considered opinion evidence in accordance with the requirements of 20 CRF 404.1527." Id.

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as a department manager. (Tr. 25-26). At the fifth and final step, the ALJ concluded based on the testimony of the VE and considering "the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26-27). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a marker, an advertising material distributor, and a router. (Tr. 27). Therefore, the ALJ concluded that Plaintiff was not under a

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

"disability," as defined by the Social Security Act, at any time between August 11, 2012 and December 31, 2017. (Tr. 27).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to properly account for Plaintiff's mental limitations in the RFC; and (2) the ALJ failed to provide a logical bridge between the evidence and his conclusions regarding Plaintiff's RFC. (Document No. 17, p. 6). The undersigned will discuss each of these contentions in turn.

**A.   Mental Limitations**

In the first assignment of error, Plaintiff argues that the ALJ's mental RFC limitations do "not adequately address the moderate limitation in concentration, persistence or pace or explain how the ALJ accounted for Ms. Lindsay's ability to stay on task." (Document No. 17, p. 6). The ALJ assessed Plaintiff's RFC at Step 3 and found that "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation." (Tr. 21). The ALJ found that Plaintiff retained the capacity to do light work with postural limitations. Id. The ALJ included the following mental RFC limitations: "The claimant was limited to simple, routine and repetitive tasks with only, one, two, or three step instructions." Id.

Plaintiff argues this mental limitation only accounts for "skill level." (Document No. 17, p. 6). Plaintiff contends the limitation does "not specifically account for moderate limitations in concentration, persistence or pace or her ability to stay on task throughout the entire workday" and is therefore inconsistent with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Document No. 17, p. 7-8). Plaintiff notes that in Mascio, the Fourth Circuit opined that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." (Document No. 17, p.7) (citing Mascio at 638) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Plaintiff

7

therefore argues that the ALJ's "fail[ure] to offer any explanation of how the RFC would account for her ability to stay on task throughout the workday," under the holding of Mascio, is a basis for remand.  (Document No. 17, p.8-9).  See Mascio 780 F.3d at 638 (holding "the ability to perform simple tasks differs from the ability to stay on task. Only the latter would account for a claimant's limitation concentration, persistence, or pace").

In response, Defendant contends that "Mascio 'only requires a remand when an ALJ's opinion is sorely lacking in a manner that frustrates meaningful review.'"  (Document 19, p. 9) (quoting Ponder v. Berryhill, No. 1:15-CV-289-RJC, 2017 WL 1246350, at *4 (W.D.N.C. March 31, 2017)) (citing White v. Colvin, 3:15-cv-197-FDW, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016)) (internal quotations omitted).  Defendant argues that the error in Mascio was "the ALJ's lack of explanation between the particular facts and the assessed RFC."  (Document No. 19, p.6). Here, however, Defendant asserts that, "based on an evaluation of the medical, opinion, and testimonial evidence, the ALJ explained that Plaintiff could perform simple, routine, and repetitive tasks with only one-, two-, or three-step instructions."  (Document No. 19, p. 6).

The undersigned agrees with Defendant.  Here, the ALJ sufficiently accounted for Plaintiff's limitations in concentration, persistence, and pace in the assessed RFC:  "As for her mental impairments . . . the evidence does not support functional limitations that would preclude *regular* and *continuous* work involving simple, routine and repetitive tasks with only one, two or three step instructions."  (Tr. 23) (emphasis added).  As the Fourth Circuit recently reiterated, Mascio did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specified limitation in the RFC.  Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020).  So long as the ALJ does not ignore the claimant's limitation in concentration, persistence, or pace and explains why further limitations in the RFC

8

Case 5:19-cv-00031-GCM-DCK   Document 20   Filed 06/25/20   Page 8 of 15

are not warranted, the ALJ satisfies his duty under Mascio.  See Howard v. Saul, No. 3:19-CV-531-KDB, 2020 WL 2199629, at 3 (W.D.N.C. May 6, 2020) (citing Shinaberry, 952 F.3d at 121). For example, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."  Shinaberry, 952 F.3d at 121 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)).  In this case, the ALJ adequately identified medical evidence supporting his finding that further limitations than those currently assessed in the RFC are unnecessary.  The undersigned will discuss the different pieces of evidence in turn.

First, the ALJ considered Plaintiff's past mental health history and treatment.  The ALJ explained "the record shows that the claimant has a history of depression and has been diagnosed with unspecified anxiety disorder."  (Tr. 23) (citing Tr. 1064, 1082).  Next, the ALJ stated that "[a]t the consultative examination in January 2015, the examiner noted that the claimant had never been psychiatrically hospitalized and had never seen a psychiatrist or counselor for her mental impairments." (Tr. 24) (citing Tr. 721). The ALJ acknowledged "claimant also reported that she wanted to deal with her problems without medication." (Tr. 24) (citing Tr. 721). The ALJ observed that Plaintiff "did not begin seeing a therapist for mental health issues until May 2016." (Tr. 24) (citing Tr. 1082).  Although the therapist diagnosed Plaintiff with "unspecified anxiety disorder," the ALJ noted that the therapist records were "vague summaries" and represent a treatment plan that is "conservative."  (Tr. 24) (citing Tr. 1082, 1084, 1086).  The ALJ also observed that "[n]or does the therapist suggest that the claimant is unable to work." (Tr. 25); see also (Tr. 1082, 1084, 1086).

Next, the ALJ also gave "some weight" to the findings of the SSA consultative examiner, Dr. Duszlak, because "she is a mental health specialist who is familiar with Social Security evidentiary requirements." (Tr. 25) (citing Tr. 718-724). The ALJ noted that Dr. Duszlak observed that "the claimant could not repeat five digits forward" and "could not recall any of the three objects after five minutes." (Tr. 24) (citing Tr. 722). However, the ALJ explained that at the consultation – and similarly at the ALJ hearing – Plaintiff had "no problems giving details of her past medical and employment history" and "little difficulty remembering the things that she needed to in order to testify in favor of her disability claim." (Tr. 24). The ALJ suggests that this "raises the question of possible malingering at the consultative examination" in 2015. Id.

The ALJ's analysis also includes consideration of Plaintiff's day-to-day activities. The ALJ observed that Plaintiff was "able to prepare simple meals, do some cleaning, and does weekly laundry. She also reported that she is able to drive, can go out alone, and is able to shop in stores for groceries 1 to 2 times per week without accompaniment." (Tr. 21). The ALJ additionally notes that Plaintiff was looking for a job, after filing for unemployment, in September 2012. (Tr. 24) (citing Tr. 409).

In considering this evidence, the ALJ concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22); see also Douglas v. Berryhill, No. 5:18-CV-084-GCM, 2019 WL 4463333, at *4 (W.D.N.C. Sept.17, 2019) (concluding that limiting Plaintiff to unskilled, simple, routine, and repetitive tasks "clearly" accounts for Plaintiff's moderate difficulties with regard to concentrating, persisting, or maintaining pace when the ALJ did "not find that the claimant's depression and anxiety are as limiting as alleged.")

Additionally, the ALJ also considered opinion evidence of the State agency evaluators. (Tr. 25). The ALJ acknowledged, but ultimately gave "little weight" to, the opinion evidence of the State agency evaluators who found Plaintiff had a severe organic mental disorder. Id. The ALJ explained that the State agency evaluators "apparently based this on the report of the consultative examiner." Id. (citing Tr. 78, 98). The ALJ further noted that Plaintiff's therapist diagnosed her with unspecified anxiety disorder, but "does not mention anything close to an organic mental disorder." (Tr. 25). The ALJ gave "significant weight" to the portion of the State agency evaluators' opinion that limited Plaintiff to "unskilled work." Id. (citing Tr. 71-84, 86-101). Notably, these portions of the record the ALJ gives significant weigh to include explanations of Plaintiff's concentration and persistence capacities as follows:

> Clmt will have some distractibility and slowed work pace due to mental symptoms; however, clmt is able to maintain attention and concentration for two hour periods over an 8 hour day in order to carry out simple tasks at a nonproductive pace.

(Tr. 81); see also (Tr. 77) ("clmt should reasonably be able to perform simple, routine, repetitive tasks at a non production based pace") and (Tr. 98). The ALJ concluded that "the record as a whole does not support findings more restrictive than the above residual functional capacity." (Tr. 25); see also (Tr. 21).

In sum, the undersigned is persuaded that the ALJ adequately considered Plaintiff's mental limitations and relied on substantial evidence in assessing her RFC. Although the opinion would have been stronger if the ALJ had elaborated on how Plaintiff's mental limitations impacted her RFC, it is clear to the undersigned that the ALJ determined the RFC after careful consideration of the record as a whole. See Shinaberry, 952 F.3d at 122; see also Howard, 2020 WL 2199629 at *3.

11

Case 5:19-cv-00031-GCM-DCK    Document 20    Filed 06/25/20    Page 11 of 15

### B. Evidence Supporting RFC

In the second assignment of error, Plaintiff contends that the ALJ "fails to build an 'accurate and logical bridge' from the evidence to his negative conclusions regarding Ms. Lindsay's statement and allegations regarding her symptoms, including pain." (Document No. 17, p. 13) (citing Brown v. Commissioner of SSA, 873 F. 3d 251, 269-71 (4th Cir. 2017)). Plaintiff argues that the ALJ failed to consider aspects of Plaintiff's medical evidence – specifically, that the ALJ failed to consider a 2010 MRI of the left hip "that suggests impingement" and a 2016 CT Scan that reveals varying levels of lumbar stenosis. (Document No. 17, p.13-14).

Regarding Plaintiff's treatment, Plaintiff argues that the ALJ failed to note the frequency of Plaintiff's epidural injections and failed to account for July 2017 physical therapy notes which note a variety of functional limitations. (Document No. 17, p.14-15). Plaintiff further contends that remand is appropriate because the ALJ "dismissed Dr. Gilchrist's treatment notes as unreliable secondary to errors with the voice recognition software." (Document No. 17, p.16).

Plaintiff further asserts that "the ALJ did not evaluate any evidence regarding Plaintiff's daily activities." (Document No. 17, p.19). Additionally, Plaintiff argues that a 2013 surveillance video of Plaintiff engaging in a wide variety of activities, including lifting both a wheelchair and a small child into a truck should not have been used by the ALJ to discredit Plaintiff's allegations of disability and was not illustrative of Plaintiff's abilities over time. (Document No. 17, p. 19).

In response, Defendant argues that the "ALJ's conclusions here are reasonable, and this evidence supported his finding that Plaintiff remained capable of a reduced range of light-level work." (Document 19, No.15). Although the ALJ did not consider every piece of evidence, including the 2010 MRI and 2016 CT scan, Defendant asserts the ALJ considered "similar

examination findings" which "supported mild spinal impairments only." (Document No. 19, p.12). Some such findings include:

> "some slight pain-limited weakness (Tr. 23 (citing Tr. 405)) and radiating leg pain, but the ALJ also found that Plaintiff responded well to injections (Tr. 23 (citing Tr. 389-99). The ALJ also observed that in July 2017, plaintiff had no trouble walking. (Tr. 23 (citing Tr. 1087)."

Id; see also Reid v. Comm'r of Soc. Sec., 769 F.3d. 861, 865 (4th Circ. 2014) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.").

Regarding Plaintiff's treatment, Defendant argues that the ALJ, rather than focusing on the frequency of the injections, "focused on Plaintiff's functional improvement after receiving the injections." (Document No. 19, p.11). The ALJ, for example, noted that Plaintiff had an approximately 50 percent improvement in her back and leg pain complaints after undergoing transforaminal injections. (Tr. 23) (citing Tr. 793). Regarding the ALJ's dismissal of Dr. Gilchrist's notes, both Plaintiff and Defendant recognize that the treatment notes are consistent with earlier treatment records. (Document No. 17, p.16, Document No. 19, p.13). Defendant therefore argues that any "purported discrepancies in the ALJ's evaluation of this evidence would be merely harmless error." (Document No. 19, p. 13).

As to daily activities, Defendant asserts that the ALJ considered Plaintiff's subjective pain complaints. (Document No. 19, p. 13) (citing Tr. 22). Moreover, Defendant also notes that the ALJ also observed that Plaintiff was able to "do simple meals, do some cleaning, and do weekly laundry, as well as drive, go out alone, and shop for groceries 1-2 times per week." (Document No. 19, p.7) (citing Tr. 21). Defendant also addressed the ALJ's use of the 2013 surveillance video. Defendant argued that "the ALJ discussed this video in the context of Plaintiff's various legal, disability, and unemployment claims, which were all filed before the video surveillance was

13

recorded." (Document No. 19, p. 15). Defendant asserts that this evidence, taken together, "further questions the alleged severity of Plaintiff's impairments during that time." (Document No. 19, p.15). Defendant explains that "[h]aving found that the alleged severity of her impairments was inconsistent with the medical record, the ALJ's conclusions as to the supportability and consistency of Plaintiff's subjective reports are reasonable." (Document No. 19, p.14).

The undersigned finds that the ALJ has adequately supported the conclusion in his decision with record evidence. In fact, the ALJ decision appears to be well-reasoned and thorough. The undersigned agrees with Defendant that the ALJ acknowledged Plaintiff's limitations and accounted for them in the RFC by limiting Plaintiff to light work with some postural limitations. (Tr. 21).

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment Pursuant To Rule 56 Of The Federal Rules of Criminal Procedure" (Document No. 16) be **DENIED**; the "Commissioner's Motion For Summary Judgment" (Document No. 18) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: June 24, 2020

David C. Keesler
United States Magistrate Judge